FILED
John E. Triplett, Acting Clerk
United States District Court

By CAshell at 2:49 pm, Jul 17, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

JAMAR BRADLEY,

        Movant,

   v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 2:18-cv-47

(Case No.: 2:16-cr-12)

### ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Jamar Bradley ("Bradley"), who is currently housed at the Federal Correctional Institution in Bennettsville, South Carolina, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence, as amended and supplemented.  Docs. 1, 8, 15.  The Government filed a Response, and Bradley filed a Reply.  Docs. 18, 34.  Bradley also filed a number of other Motions, to which the Government filed Responses.[1]  Docs. 16, 21, 23, 24, 25, 26, 28, 29, 33, 36, 38, 39.  For the reasons which follow, I **RECOMMEND** the Court **DENY** Bradley's § 2255 Motion, **DENY** Bradley's Motion to Dismiss, doc. 38, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Bradley *in forma pauperis* status on appeal and a Certificate of Appealability.  I **GRANT** Bradley's construed Motions to

---

[1]    Bradley's "Motion to Strike", doc. 16, concerns Bradley's earlier "Motion to Amend § 2255," doc. 5, in which he attempted to assert additional claims in his § 2255 Motion.  In his Motion to Strike, Bradley states he no longer wishes to pursue the additional claims in the Motion to Amend because he "realized that the allegations contained in the [Motion to Amend] were not articulated correctly and some of the allegations contained therein were frivolous."  Doc. 16.  The Government did not respond to Bradley's Motion to Strike.  Accordingly, the Court **GRANTS in part as unopposed** Bradley's Motion to Strike, doc. 16.  The Court does not strike Bradley's filing at Docket Number 5.  Instead, the Court has not considered any assertions or arguments Bradley set forth in Docket Number 5, per Bradley's request.

Amend and his Motion for Leave to Supplement.  Docs. 21, 25, 33.  I **DENY** Bradley's Motion to Change Venue, doc. 26.

## BACKGROUND

Bradley was indicted along with 18 co-defendants—including Bradley's mother and stepfather—in a 30-count indictment related to an extensive drug-trafficking conspiracy.  United States v. Bradley, 2:16-cr-12 ("Crim. Case"), Doc. 3.  Specifically, Bradley was charged with conspiracy to possess with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 846 (count 1); conspiracy to use, carry, or possess firearms, in violation of 18 U.S.C. § 924(o) (count 2); several counts of possession of cocaine base (crack) with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (counts 4, 5, 17, 18, 20, 21); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (count 22); using, carrying, and brandishing a firearm during a drug trafficking crime or crime of violence, in violation of 18 U.S.C. § 924(c) (counts 23, 25); and attempted interference with commerce by robbery, in violation of 18 U.S.C. § 1951 (count 24).

Bradley's appointed attorney, Jason Tate, filed numerous pre-trial motions on Bradley's behalf, including a motion to suppress evidence obtained through Court-authorized wiretaps.  Crim. Case, Docs. 353, 355–59, 361, 375.  Bradley and Mr. Tate negotiated a plea agreement with the Government under which Bradley would plead guilty to the conspiracy charge (count 1), and, in exchange, the Government agreed to: not object to any recommendation that Bradley receive a three-level reduction for acceptance of responsibility; not file a 21 U.S.C. § 851

enhancement, if applicable; and move the Court to dismiss the remaining counts against Bradley.[2]  Crim. Case, Docs. 515, 516.

The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing, during which Brunswick Police Department Detective Michael Sapp provided the factual basis for the plea, Judge Wood accepted Bradley's plea, and Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Crim. Case, Doc. 797.  The probation officer prepared a draft PSR, and the Government and Bradley's counsel both submitted objections to the draft PSR.  The probation officer then prepared and submitted a final PSR (which resolved the Government's objection in the Government's favor) and an addendum, noting Bradley's unresolved objections.  Crim. Case, Doc. 743.  Bradley's counsel also filed a motion for downward variance.  Crim. Case, Doc. 716.  Judge Wood conducted a lengthy sentencing hearing.  Doc. 768.  Ultimately, Judge Wood sustained one of Bradley's objections to the PSR, overruled the others, denied Bradley's motion for downward variance, and sentenced Bradley to 215 months' imprisonment.  Id.  The sentence imposed was near the midpoint of the 188- to 235-month range recommended under the advisory Guidelines, as found by Judge Wood. Id.

Bradley has now filed this § 2255 Motion, as amended and supplemented, challenging his sentence and conviction.  Doc. 1, 8, 15.  The Government filed a Response, and Bradley filed a Reply.  Docs. 18, 34.  Bradley has also filed a number of Motions in this case.  The Court will address Bradleys' various pending Motions first and then addresses Bradley's § 2255 claims.

---

[2]      The parties jointly informed the Court they had reached a plea agreement and resolved Bradley's pretrial motions.  Crim. Case, Doc. 519.  The Court then denied the pending motions as moot.  Crim. Case, Doc. 523.

**DISCUSSION**

**I.      Motion for Relief Under Federal Rule of Civil Procedure 60(d)(3), Doc. 25**

In various convoluted filings, Bradley asks the Court to set aside the judgment in his criminal case and invokes Federal Rule of Civil Procedure 60(d)(3).[3]  The Court denied Bradley's first motion seeking relief under Rule 60(d)(3) as baseless.  Crim. Case., Docs. 911, 912.  Bradley then filed his "Motion for Leave to Correctly Request Permission to [Pursue] a Rule 60(d)(3) Claim," which is currently pending.  Doc. 21.  In that Motion, Bradley states his initial motion was merely a request for permission to file a Rule 60 motion and should not have been denied, and, ostensibly, asks for permission to file a motion under Rule 60.  Id.  Despite that Motion not being ruled on, Bradley then filed another motion in which he asks the Court to set aside the judgment in his criminal case under Rule 60(d)(3).  Doc. 25.

In terms of the substance of Bradley's Rule 60 request, he contends the judgment should be set aside because the indictment "was obtained by fraud on the Court when the Prosecutor and Judges presented what they knew to be false material evidence to the Grand Jury Panel."  Doc. 25 at 2.  Bradley argues the prosecution used Michael Sapp as its lead witness, and he works for the same police department that his mother and stepfather sued in a civil action in 2014.  Id.  Bradley states Judge Wood presided over this civil action, entered orders, and learned details about the civil case before she sentenced him, his mother, and stepfather in the criminal case.  Id.  Bradley contends Judge Wood and former Magistrate Judge Baker did not recuse themselves in his criminal matter "after being fully aware of the retaliation against [him], and his parents that arose from their civil case that was granted in Bradley's parents favor."  Id. at 3.  Bradley states

---

[3]       The first filing (which was denied) was docketed only in Bradley's criminal case.  Crim. Case, Docs. 911, 912.  The second two filings were docketed in both cases.  Docs. 21, 25; Crim. Case, Docs. 913, 938.  All of these filings were submitted after Bradley's direct appeal was dismissed and after he filed his § 2255 Motion.

his parents were arrested the day after their civil suit settled.  Id.  Finally, Bradley contends the actions of Judge Wood and Judge Baker violated his right to due process, and this Court should set aside his judgment of conviction.  Id. at 4–5.

The Government opposes Bradley's Motions, arguing that he cannot attack the judgment in his criminal case through Rule 60(d)(3).  Docs. 23, 28 at 3.  In the alternative, the Government avers Bradley's Motions should be denied on the merits.  The Government alleges the standard for fraud on the court is demanding and must be established by clear and convincing evidence.  Id. at 4.  The Government also argues Bradley does not set forth sufficient facts to support any claim of fraud.  Id. at 5.

Bradley's request for the Court to set aside the judgment in his criminal case under Federal Rule of Civil Procedure 60(d)(3) is procedurally improper.  Federal Rule of *Civil* Procedure 60 simply cannot be invoked to set aside a judgment in a *criminal* prosecution.  See, e.g., United States v. Mosavi, 138 F.3d 1365, 1366 (11th Cir. 1998) ("Rule 60(b) simply does not provide for relief from judgment in a criminal case.").  While a Rule 60(d)(3) motion may be used to attack "some defect in the integrity of the federal habeas proceedings," it cannot be used to attack "the substance of the federal court's resolution of a claim on the merits."  Cano v. United States, 796 F. App'x 647, 649 (11th Cir. 2019) (quoting Gonzalez v. Crosby, 545 U.S. 524, 532 (2005)).  A motion that attacks a "federal court's previous resolution of a claim on the merits," or which "seeks to add a new ground for relief" is not a proper Rule 60(d)(3) motion, but is, instead, a request for relief under § 2255.  Id.

Here, Bradley attacks the judgment in his criminal case based on allegations of fraud by law enforcement officers, prosecutors, and the assigned judges.  Doc. 25.  Bradley attacks the

substance of the judgment in the criminal case but does not attack the integrity of the federal habeas proceedings.[4]  Therefore, Bradley's Rule 60 Motion is procedurally improper.

However, it appears Bradley is confused about the nature of a Rule 60 motion.  Given that Bradley cites cases treating Rule 60 motions as second or successive § 2255 motions and he asked for permission to file his Rule 60 Motion in this case, the Court construes Bradley's Rule 60 Motion as a request to raise his fraud allegations as an additional claim for § 2255 relief in this proceeding.  See Docs. 21, 25 (citing Scotton v. United States, No. 17-10541, 2017 WL 7511339, at *2 (11th Cir. Nov. 22, 2017)).  In other words, the Court construes Bradley's Rule 60 Motion as a request to amend his § 2255 Motion to add claims that the indictment in his criminal case was obtained by fraud and that the judges assigned to the criminal case should have recused themselves because of their role in the civil action involving Bradley's co-defendants. Based on that construction, the Court **GRANTS** Bradley's Rule 60 Motion, docs. 21, 25, construed as Motions to Amend.[5]  The Court addresses the merits of the claims in Bradley's construed Motions to Amend in § V(A) of this Order and Report and Recommendation.

## II.     Motion to Change Venue, Doc. 26

Next, Bradley requests a change in venue "because of the conflict of interest."  Doc. 26. Bradley does not elaborate on this conclusory allegation.  The Government emphasizes that Bradley cites no authority for his request and opposes the request for the same reasons set forth in its Responses to Bradley's § 2255 and Rule 60(d)(3) Motions.  Doc. 29 at 3.

---

[4]     As explained below, Bradley has separately moved for the assigned judges to recuse themselves from presiding over his § 2255 Motion.  Doc. 6.  To the extent Bradley challenges the integrity of these § 2255 proceedings, he does so in his recusal motion, not his Rule 60 Motion.  Judge Wood will address Bradley's recusal motion by separate Order.

[5]     To be clear, if the Court did not construe Bradley's Rule 60 Motion as a motion to amend, the Rule 60 Motion would be denied in its entirety as procedurally improper.

The Court **DENIES** Bradley's Motion.  He presents no supporting authority, and he fails to present any facts supporting his claimed conflict of interest.

### III.     Motion for Leave to Supplement § 2255 Motion, Doc. 33

Bradley seeks to supplement his § 2255 Motion based on the United States Supreme Court's ruling in Rehaif v. United States, 139 S. Ct. 2191 (2019).  Doc. 33-1.  The Government opposes Bradley's Motion on the grounds that Rehaif does not apply to Bradley.  Doc. 36.  The Court **GRANTS** Bradley's request to supplement and addresses the merits of his Rehaif claim in § V(C) of this Order and Report and Recommendation

### IV.     Motion to Dismiss Conviction/Charges, Doc. 38

Bradley moves to dismiss his conviction on the grounds that members of the Glynn-Brunswick Narcotics Enforcement Team ("GBNET") were involved in the investigation leading up to his conviction, and an internal affairs investigation identified improper conduct by members of GBNET.  Doc. 38 at 1.  Bradley states, "Based on procedure violations the behavior [of GBNET members] effected the out-come of Bradley's conviction."  Id.  Bradley contends his conviction should be dismissed on these grounds.  The Government maintains Bradley's assertions are conclusory and should be denied.[6]  Doc. 39 at 3.

I **RECOMMEND** the Court **DENY** Bradley's Motion to Dismiss.  He makes nothing more than unsupported, conclusory allegations, which are insufficient to obtain relief.  United States v. James, CR416-085, CV419-026, 2019 WL 1212949, at *2 (S.D. Ga. Feb. 7, 2019) ("[C]onclusory claims—unsupported by any facts or argument of any kind—do not entitle a movant to § 2255 relief.") (alteration in original) (citing cases).

---

[6]      The Government also argues Bradley's plea agreement procedurally bars any claims based on pre-plea conduct.  Doc. 39 at 3.  While this may be conceptually true, it overlooks Bradley's assertion that the internal affairs investigation constitutes newly discovered evidence.  Regardless, Bradley's claims in this Motion still fail because they are merely unsupported, conclusory allegations.

## V.      Section 2255 Claims

Bradley's § 2255 claims are scattered across various filings, amendments, and supplements.  Doc. 1, 1-1, 7, 8, 15, 21, 25, 33.  For the sake of clarity, the Court summarizes Bradley's claims here:

A.      Judicial bias or conflict on the part of the assigned judges.

B.      Congress exceeded its power in enacting the criminal statute under which Bradley was convicted, and the Government lacked the authority to prosecute the case.

C.      The United States Supreme Court's ruling in <u>Rehaif v. United States</u> renders Bradley's sentence invalid.

D.      Appointed counsel rendered ineffective assistance, based on the following:

1.      Counsel failed to move to suppress evidence obtained by wiretap;

2.      Counsel failed to adequately investigate the crime before Bradley signed the plea agreement;

3.      Counsel negotiated a non-advantageous plea agreement;

4.      Counsel failed to object to a lack of factual basis for Bradley's guilty plea;

5.      Counsel failed to adequately challenge certain sentencing enhancements;

6.      Counsel failed to challenge the quantity of drugs attributed to Bradley;

7.      Counsel failed to impeach Bradley's mother; and

8.      Counsel failed to object to the Court's use of an improper sentencing factor (i.e., Bradley's lack of cooperation).

Bradley requests an evidentiary hearing on his § 2255 claims, doc. 15 at 11, doc. 34 at 4, but I do not find one is necessary.  Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  <u>Winthrop-Redin v. United States</u>, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Moreover, no hearing is

required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Finally, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004). Having considered these standards in light of Bradley's § 2255 claims, I find that no evidentiary hearing is needed. The Court now addresses each of Bradley's § 2255 claims.

### A.      Judicial Bias or Conflict

Bradley contends the judges assigned to his criminal case—United States District Judge Wood and then-United States Magistrate Judge Baker—were biased or had a conflict in Bradley's criminal case because those judges were also assigned to a civil case involving Bradley's mother and stepfather, who were also his co-defendants in the criminal case.[7] Docs. 21, 25. Bradley offers nothing more than conclusory allegations in support of his claim that the indictment was obtained by fraud and that the judges assigned to the criminal case should have recused themselves.

Recusal is governed by 28 U.S.C. §§ 144 and 455. Jones v. Commonwealth Land Title Ins. Co., 459 F. App'x 808, 810 (11th Cir. 2012). Under § 144, a judge must recuse herself or

---

[7]      It is not clear whether Bradley contends: (a) Judge Wood and Judge Baker should have recused from the criminal case sua sponte, and that this is a basis for § 2255 relief; (b) Judge Wood and Judge Baker should recuse from the § 2255 proceedings because of their roles in the civil action involving Bradley's co-defendants and their roles in the criminal case; or (c) both. See Docs. 6, 7, 21, 25. The Court construes Bradley's pro se pleadings broadly and understands that he is raising both challenges. The Court will issue a separate ruling on Bradley's motion to recuse, to the extent the motion seeks for Judge Wood to recuse from these § 2255 proceedings. Doc. 6. Here, the Court addresses Bradley's argument that purported bias and conflict in the criminal proceedings entitle him to § 2255 relief. Docs. 21, 25.

himself when a party to a district court proceeding "files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."  28 U.S.C. § 144.  "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists."  Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000).  Under § 455(a), a judge must disqualify herself or himself if her or his "impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Section 455(a) requires recusal where "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."  Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988).  Any doubts must be resolved in favor of recusal.  United States v. Kelly, 888 F.2d 732, 744 (11th Cir. 1989).

Regarding recusal under § 144, Bradley's affidavit is insufficient, as he fails to plausibly allege judicial bias against him, doc. 7; rather, Bradley's declarations are nothing more than baseless assertions that, because Judge Wood was the presiding judge in a civil action that is not related to Bradley's post-conviction motions, she gained knowledge about Bradley's criminal prosecution.  Bradley fails to show Judge Wood or former Magistrate Judge Baker were biased or acted improperly in any way in either case.  See United States v. Grinnell Corp., 384 U.S. 563, 583 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his [or her] participation in the case.").

Similarly, recusal under § 455 is not warranted.  Disqualification "may not be predicated on the judge's rulings in the instant case or in related cases."  Deems v. Comm'r of IRS, 426 F. App'x 839, 843 (11th Cir. 2011) (citing Phillips v. Joint Legis. Comm. on Performance &

Expenditure Review of the State of Miss., 637 F.2d 1014, 1020 (5th Cir. 1981)).  As noted

above, Bradley does not set forth any supported contentions that Judge Wood or Judge Baker

should recuse themselves in his § 2255 proceedings.[8]

Because Bradley has not put forth any evidence raising reasonable doubts as to the

assigned judges' impartiality, recusal is not warranted in this case.  In addition, no one—

including Bradley or Mr. Tate—ever raised the issue of recusal during the course of the criminal

proceedings in this case.  Accordingly, the Court should **DENY** Bradley's § 2255 claims based

on judicial bias or conflict.

### B.   Congress Exceeded its Power in Enacting 21 U.S.C. § 846, and the Government Lacked Authority to Prosecute the Case

Bradley contends Congress exceeded its power and violated the 10th Amendment to the

United States Constitution by enacting 21 U.S.C. § 846, the Code provision under which Bradley

was convicted.  Doc. 8.  He also appears to assert the Government lacked authority to prosecute

him federally because any crimes he allegedly committed occurred within a state.  Id. at 1.

Bradley seeks the vacatur or reversal of the judgment against him and his release.  Id. at 2.

"Article I, Section 8 of the Constitution empowers Congress to create, define, and punish

crimes, irrespective of where they are committed."  United States v. Morrison, Crim. Action File

No. 1:18-cr-141, 2019 WL 2482170, at *1 (N.D. Ga. Mar. 11, 2019).  Thus, Congress had

constitutional authority in enacting § 846.  Id. at *2 (citing Gonzales v. Raich, 545 U.S. 1, 9

(2005) (holding the Controlled Substances Act is a proper exercise of Congress' authority to

regulate interstate commerce); then citing United States v. Wilson, 238 F. App'x 571, 572–73

(11th Cir. 2007) (holding that, by enacting the Controlled Substances Act, Congress did not

---

[8]    Judge Baker is no longer assigned to these proceedings based on his appointment and investiture
as a District Judge.  See 1:18-mc-12.

exceed its authority under the Commerce Clause)).  Additionally, federal district courts have exclusive jurisdiction over "all offenses against the laws of the United States."  18 U.S.C. § 3231.  Even in those situations "where state officials conducted most of an investigation, federal prosecutors possess[] full authority to bring a federal indictment so long as they alleged a violation of federal law."  United States v. Singletary, 345 F. App'x 466, 468 (11th Cir. 2009).

The indictment in this case alleged a number of violations of federal laws passed under Congress' constitutional authority.  Therefore, the federal government had authority to prosecute Bradley, and this Court had jurisdiction to hear the case.  Bradley's enumeration of error is without merit, and the Court should **DENY** this portion of Bradley's § 2255 Motion.

### C.     Rehaif v. United States Claim

Bradley argues the United States Supreme Court's ruling in Rehaif v. United States, 139 S. Ct. 2191 (2019), entitles him to § 2255 relief.  Doc. 33-1.  In Rehaif, the Supreme Court held the government must prove the defendant knew he possessed a firearm and that he knew he had the relevant status of a restricted person when he possessed the firearm in order to secure a conviction under 18 U.S.C. §§ 922(g) or 924(a).  139 S. Ct. at 2194.  Bradley was not convicted under either § 922(g) or § 924(a).  Instead, he pleaded guilty to conspiracy to possess with intent to distribute controlled substances, in violation of § 846.  Consequently, the decision in Rehaif has no bearing on Bradley's case, and the Court should **DENY** Bradley's claims based on Rehaif.

### D.     Ineffective Assistance of Counsel

Bradley raises several instances of ineffective assistance of counsel related to pre-trial proceedings, during plea negotiations, and during sentencing.  Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v.

Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver

v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover

v. United States, 531 U.S. 198, 202 (2001).  This right also extends to the entry of a guilty plea,

Hill v. Lockhart, 474 U.S. 52, 58 (1985).

   To prevail on a claim of ineffective assistance of counsel, the defendant must

demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an

objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient

performance.  Id. at 685–86.  The deficient performance requirement concerns "whether

counsel's advice was within the range of competence demanded of attorneys in criminal cases."

Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption that counsel's conduct

fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x

336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to

'establish that counsel performed outside the wide range of reasonable professional assistance'

by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed

by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014)

(quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).

"Showing prejudice requires petitioner to establish a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."  Id.

(internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that

seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The

likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter,

562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U .S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

       **1.**      *Pre-Trial Claim: Failure to Move to Suppress Evidence Obtained by Wiretap*

Bradley contends his appointed counsel, Mr. Tate, was ineffective by failing to move to suppress wiretaps and statements and evidence derived from those wiretaps.  Doc. 1-1 at 6–8.  According to Bradley, it is clear the Government relied heavily on evidence from wiretaps.  Id. at 7.  In addition, Bradley states law enforcement officials swore to conclusory statements and fraudulent claims in affidavits as to why normal investigative techniques were inadequate to reveal criminal activity, as 18 U.S.C. §§ 2518(3)(c) and 2519(1)(c) require.  Id.  Bradley contends without the "illegally or fraudulently obtained wiretaps," he would not have received the sentence enhancements he received.[9]  Id. at 4.  Bradley also states the wiretap authorizations were "probably faulty" because he changed his telephone number often.  Id. at 24.  The Government contends Bradley's entry of a guilty plea bars this assertion.  Doc. 18 at 17.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional that defendant could not raise double jeopardy claim on collateral attack following guilty plea).  Pertinently, a "knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea."  Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992).

---

[9]      Bradley makes separate arguments regarding his sentencing proceedings and the enhancements he received, which the Court addresses later in this Report.

Bradley's claim that Mr. Tate was ineffective for not filing a motion to suppress fails—first and foremost—because Mr. Tate *did* file a motion to suppress wiretapping and electronic surveillance evidence.  Crim. Case, Doc. 361.  The Government responded to that motion.  Crim. Case, Doc. 469.  Ultimately, the parties jointly informed the Court their motions had been resolved in light of the plea agreement, and the Court dismissed the motion to suppress as moot.  Crim. Case, Docs. 519, 523.  The record directly contradicts Bradley's assertion that Mr. Tate did not file a motion to suppress.  Additionally, as discussed below, Bradley's claim regarding the motion to suppress is precluded by his knowing and voluntary plea agreement.  Bradley does not claim Mr. Tate's failure to file a motion to suppress the wiretap evidence (or Mr. Tate's actions related to the motion that was filed) affected the voluntariness of his plea; rather, Bradley contends the evidence obtained as a result of the wiretaps led to sentence enhancements.  See Menchaca v. Davis, Civil No. SA-18-CA-01272, 2019 WL 4702633, at *4 (W.D. Tex. Sept. 25, 2019) (noting allegation of ineffective assistance of counsel for failure to file a motion to suppress before plea agreement reached did not relate in any way to voluntariness of plea).  Bradley's § 2255 claim regarding his counsel's purported failure to file a motion to suppress is meritless, and the Court should **DENY** this portion of Bradley's Motion.

### 2.      *Claims Related to Plea Agreement Negotiations and Guilty Plea*

Bradley raises various challenges to his appointed counsel's performance related to plea agreement negotiations and Bradley's guilty plea.  Specifically, Bradley argues Mr. Tate did not adequately investigate the charges Bradley faced, which resulted in "a poorly negotiated plea agreement."  Doc. 1-1 at 10.  Bradley argues Mr. Tate "tricked" him into entering the plea agreement by convincing him that he would receive the mandatory minimum sentence because the drug quantity attributed to him "was grossly exaggerated . . . ."  Id.  Bradley contends he

trusted Mr. Tate, and Mr. Tate abused this trust, leading him to accept a disadvantageous plea agreement.  Id.  Moreover, Bradley contends there was not a sufficient factual basis for the plea agreement, and the Court could not have found more than 280 grams of cocaine base and more than 500 grams of cocaine were attributable to him.  Doc. 15 at 7.

The Government alleges Bradley's claims of ineffective assistance during the plea process are not supported by the record.  Doc. 18 at 19.  The Government states Bradley was captured on tape committing crimes, intercepted on wiretaps, and implicated by his co-defendants, and he admitted to all of the facts in his plea agreement and during his change of plea hearing.  Id. at 20.  In addition, the Government states Bradley testified he understood the purpose of the plea hearing and his rights, that he wanted to plead guilty because he was guilty of the charged conspiracy offense, and he was satisfied with Mr. Tate's representation.  Id.  The Government notes that, had Bradley gone to trial and been convicted of all the charges levied against him in the indictment, he faced a minimum of 42 years' and up to life imprisonment.  Id. at 21.  When viewed at the time of the guilty plea, the Government asserts it was reasonable for Mr. Tate to recommend to Bradley that the chance for a much lower sentence was worthwhile, especially in light of overwhelming evidence of his guilt.  Id. at 21–22.  The Government argues Bradley's assertion that he would have proceeded to trial but for Mr. Tate's "bad advice" is unbelievable.  Id. at 22.  In addition, the Government states Bradley's guilty plea was knowing and voluntary.  Id. at 22–24.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice

of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. Cannon v. Jones, Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing McMann v. Richardson, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74

(1977).  The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  Id.

When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."  Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1965 (2017).  "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Spriggs v. United States, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted).  A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors."  Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163 (2012)).  "Further, the decision to reject the plea must have been 'rational under the circumstances.'"  Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).  In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Cannon, 2017 WL 990583, at *10 (citing Strickland, 466 U.S. at 689).

Bradley and Mr. Tate were able to negotiate a plea agreement with the Government whereby Bradley agreed to plead guilty to the charge of conspiracy to possess with intent to distribute controlled substances, including 500 grams or more of cocaine and 280 grams or more of cocaine base (crack) (count 1).  Crim. Case, Docs. 515, 516.  In exchange, the Government agreed to: not object to a recommendation that Bradley receive a three-level reduction for acceptance of responsibility, if made; not file a 21 U.S.C. § 851 enhancement, if applicable; and move the Court to dismiss the remaining counts against Bradley.  Crim. Case, Doc. 516 at 3.  The plea agreement set forth the statutory elements and factual basis of the offense to which Bradley was pleading guilty.  Id. at 4–5.  Bradley agreed that he was guilty of the offense.  Id. at 5.  In addition, Bradley affirmed he had read and reviewed the agreement with his attorney, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate.  Id. at 13.

Bradley appeared before Judge Wood for his Rule 11 proceeding.  Crim. Case, Doc. 797.  Judge Wood addressed Bradley and explained that the purpose of the hearing was to ensure he understood the case that was pending against him, that he understood all of the rights he was waiving or giving up by pleading guilty, that there was a factual basis for the guilty plea, and that, after consultation with Mr. Tate, pleading guilty was what Bradley wanted to do.  Id. at 2.  Judge Wood inquired whether anyone had made, leaned on, or pushed Bradley to offer to plead guilty, and he said no one had done so and that pleading guilty was what he wanted to do.  Id. at 3.  Judge Wood told Bradley that he did not have to plead guilty.  Id. at 7.  Judge Wood also told Bradley that, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses

and evidence; call witnesses on his behalf; and testify himself or remain silent.  Id. at 7–8.

However, Judge Wood cautioned Bradley he would be waiving these rights if he pleaded guilty

and she accepted that guilty plea.  Id. at 8.  Bradley stated he understood.  Id.  Bradley also stated

he and Mr. Tate had an opportunity to talk about the facts and the law pertaining to his case,

including the indictment, as well as about the proposed plea agreement.  Id. at 8–9.  Bradley

stated Mr. Tate had spoken with him in general terms about the Sentencing Guidelines and

affirmed he was satisfied with Mr. Tate's representation and had no complaints whatsoever.  Id.

at 9.

Judge Wood reviewed the indictment with Bradley, the essential elements of the crime to

which he was pleading guilty and the other counts of the indictment naming him, and that the

Government would have to prove those essential elements.  Id. at 9–11.  Judge Wood asked

Bradley if he was familiar with the counts, whether he and Mr. Tate went over the counts at

length, and if he had read and reviewed the indictment, and he responded "yes" to each question.

Id. at 11.  He stated he had no questions.  Judge Wood advised Bradley that to convict him of

count 1 of the indictment, the Government would have to prove beyond a reasonable doubt the

three essential elements of the conspiracy: (1) two or more people agreed in some way to

"accomplish a shared and unlawful plan to possess 500 grams or more of cocaine and 280 grams

or more of cocaine base," Schedule II controlled substances; (2) Bradley knew the unlawful

purpose of the plan and willfully joined it; and (3) the object of the unlawful plan was to possess

with intent to distribute 500 grams or more of cocaine and 280 grams of cocaine base (crack).

Id. at 11–12.  By pleading guilty, Judge Wood noted Bradley was admitting the essential

elements of the crime to which he intended to plead guilty were satisfied.  Id. at 12.  Judge Wood

advised Bradley of the maximum sentence she could impose, which was not less than 10 years

nor more than life in prison.  Id.  Moreover, Judge Wood explained to Bradley that, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553 but his sentence carried a mandatory minimum of at least 10 years' imprisonment.  Id.  Bradley stated he understood and had no questions.  Id. at 13, 14.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Greg Gilluly stated the material provisions were:

> This Defendant agrees to plead guilty to Count 1 of the indictment.  He agrees to acknowledge at the time of the plea the truth of the factual basis that is contained within the plea agreement.
>
> He agrees to waive all other rights to request information about the investigation and prosecution of his case under the Freedom of Information Act and the Privacy Act.  He waives the protections of Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.  If he fails to plead guilty or later withdraws his guilty plea, all statements made by him in connection with the plea and/or all leads derived therefrom would be admissible for any and all purposes.
>
> He agrees to pay on the date of sentencing any special assessments imposed by [t]he Court and agrees to the forfeiture as outlined in the indictment.  However, we noted previously, we're not seeking forfeiture as to this Defendant.
>
> He waives his right to appeal on certain grounds and waives his right to collaterally attack as outlined in the plea agreement.
>
> The Government agrees to not object to a recommendation from the probation office that the Defendant receive a full three-level reduction for acceptance of responsibility if the recommendation is made.
>
> The Government agrees to not file a Title 21 U.S.C. Section 851 enhancement if applicable and agrees to move to dismiss the Defendant from the remaining counts of the indictment at sentencing.

Id. at 15–16.  Judge Wood asked Bradley if AUSA Gilluly's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was.  Id. at 16.  Bradley also stated he read the plea agreement before he signed it and Mr. Tate answered any

questions he may have had.  Id.  Bradley affirmed no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement.  Id. at 17.

Judge Wood then asked Bradley whether he wished to still plead guilty to count 1 of the indictment because he was in fact guilty of that count, and he answered in the affirmative.  Id. at 16.  Judge Wood also asked Bradley whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did.  Id. at 18.  Judge Wood determined Bradley's offer to plead guilty was "knowing" and "voluntary."  Id. at 19.  Bradley agreed.  Id.

The Government provided a factual basis for Bradley's plea of guilty by calling Brunswick Police Department Detective Michael Sapp to testify.  Id.  Detective Sapp testified he was one of the lead investigators of the investigation into Bradley and the other people outlined in the indictment.  Id. at 20.  Detective Sapp stated law enforcement officials used Court-authorized wiretaps, multiple search warrants, administrative and grand jury subpoenas, physical, electronic, and aerial surveillance, controlled buys, and multiple informants to dismantle the organization.  Id.  Detective Sapp also stated Bradley was part of a conspiracy operating in the Southern District of Georgia which received quantities of cocaine from one co-defendant (Romia Daniels), who received these quantities from the Houston, Texas area, and distributed more than 280 grams of crack cocaine and more than 500 grams of powder cocaine.  Id. & at 22.  In addition, the investigation revealed Bradley was a member of the Bloods gang, and his stepfather, Calvin Lewis, was the leader of the Bloods gang.  Id. at 21.  Investigators used confidential informants to make a "number of controlled buys" from Bradley.  Id.  This investigation revealed Bradley sold crack out of various "trap houses" and possessed and carried firearms in furtherance of his drug crimes.  Id. at 22.  Further, Bradley was present at his mother and stepfather's house when people were recruited and "beat in" into the Bloods gang.  Id. at 23.

Judge Wood asked Detective Sapp to describe what a "beat in" is, which he did, stating that prospective members of the Bloods gang were beaten as their initiation into the gang, and he also noted Bradley was captured in videos and pictures during these beat ins.  Id. at 24–25.

Bradley disputed Detective Sapp's testimony about whether the beat ins were recorded by video and disputed whether he possessed a firearm.  Id. at 25.  Bradley confirmed that he did not dispute any of Sapp's testimony about drugs.  Id. at 25.  Judge Wood was "satisfied" there was a factual basis for a plea, accepted Bradley's plea, and adjudged him guilty of count 1 of the indictment.  Id. at 26.  Judge Wood advised Bradley a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Tate.  Id.

Judge Wood informed Bradley at the outset of the Rule 11 hearing the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Bradley wanted to do after consultation with his attorney.  Id. at 2–3.  After telling Bradley he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing, Bradley averred that no one was forcing him to plead guilty and that pleading guilty was what he wanted to do.  Id. at 3.  Judge Wood discussed the specific rights Bradley was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Bradley he would waive those rights if he pleaded guilty and she accepted his plea.  Id. at 7–8.  Bradley stated he had spoken with Mr. Tate about the facts and law of his case, including the plea agreement and indictment.  Id. at 8–9, 11. Bradley verified AUSA Gilluly's summary of the plea agreement was consistent with the plea he had signed.  Id. at 16.  Judge Wood asked Bradley whether he wanted to plead guilty because he was, in fact, guilty of count 1 of the indictment, and he answered in the affirmative.  Bradley

declared that he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so.  Judge Wood determined Bradley's guilty plea was knowing and voluntary. Id. at 19.  Detective Sapp then provided a factual basis for Bradley's plea, and Bradley agreed with the Government's factual basis as to the drugs but not as to the possession of a firearm or the circumstances of the beat-in videos.  Id. at 25.  Judge Wood accepted Bradley's plea and adjudged him guilty of conspiracy of possession with intent to distribute cocaine and cocaine base.  Id. at 26.  In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing.  Lambert, 777 F. App'x at 339.

Bradley's claim that Mr. Tate was ineffective during the negotiation of the plea agreement and the Rule 11 hearing and that, had it not been for Mr. Tate's ineffective assistance, he would not have pleaded guilty, is disproven by the record and is wholly without merit.  If Bradley had not entered a plea agreement, proceeded to trial on all counts of the indictment, and been convicted of those counts, he would have faced a minimum of 42 years and up to life in prison.[10]  Crim. Case, Doc. 4.  Because Bradley pleaded guilty, his Guideline sentencing range was 188 to 235 months' imprisonment, or a range of less than half of what he likely would have faced by statute had he not pleaded guilty and received a three-point level reduction for acceptance of responsibility.  The record before the Court, including the statements Bradley rendered under oath and under penalty of perjury, contradicts Bradley's claims relating to Mr. Tate's assistance during the plea agreement negotiation process and whether his plea was entered into knowingly and voluntarily.  Further, Bradley has not shown that not accepting the plea would have been rational under the circumstances, Martinez, 684 F. App'x at 922, and instead

---

[10]     The Court recognizes the applicable standard is not whether the result of a trial would have been different than entering a plea.  Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1965 (2017).  The Court notes this merely as illustrative of the reasonableness of Bradley's acceptance of a plea agreement.

offers only conclusory allegations in this regard.  Bradley is not entitled to his requested relief, and the Court should **DENY** this portion of his Motion.

### 3. *Claims Related to Sentencing*

Bradley also clams Mr. Tate rendered ineffective assistance during the sentencing phase of his criminal proceedings.  Bradley asserts he expressed concern to Mr. Tate from the beginning about the amounts of drugs that were attributed to him.  Doc. 1-1 at 24.  Bradley claims he wanted to challenge a firearm being attributed to him, but Mr. Tate advised him to drop this challenge because, if Judge Wood agreed with them on the enhancement relating to premises, she would rule the firearm enhancement would not apply.  Id. at 25.  Additionally, Bradley states Mr. Tate was not adequately prepared during sentencing, as the Government played several phone calls in support of the violence enhancement, yet Mr. Tate said he had never heard any of these calls and called a testifying witness by the wrong name.  Id.  Bradley claims Mr. Tate "expressed on numerous occasions he was 'hamstrung.'"  Id.  Bradley contends Judge Wood partially relied on his lack of cooperation with law enforcement in fashioning her sentence, yet Mr. Tate did not object to this.  Id. at 26; Doc. 15 at 9.  Bradley also contends Mr. Tate did not challenge the credibility of the Government's witnesses, including his mother who has battled drugs and mental illness her entire life.[11]  Doc. 1-1 at 29, 31.

The Government argues the record contradicts Bradley's claims.  Doc. 18 at 25.  Specifically, the Government asserts Mr. Tate objected to the enhancements the probation officer recommended, and Judge Wood sustained one of his objections.  Id.

According to the PSR, Bradley's base offense level on count 1 of the indictment was 30.  PSR, ¶ 30.  The offense level was based, in part, on the quantity of drugs attributed to Bradley.

---

[11]     Although Bradley refers to witnesses (plural), the only specific witness he mentions is his mother.

The probation officer determined "Bradley is conservatively attributed with a minimum of 525 grams of cocaine base ("crack") (10.5 grams per week for 50 weeks)." PSR, ¶ 29. The probation officer reached this conclusion based on intercepted wire communications and statements Melvina Lewis (Bradley's mother) made during an interview that demonstrated Bradley obtained between 10.5 grams and 21 grams of crack cocaine per week between May 2015 and April 20, 2016. Id. Thus, the probation officer made his calculation of total drug attribution based on the lower weekly estimates. The probation officer added three two-point enhancements and a three-point upward level adjustment, totaling 9 levels, based on Bradley: (1) possessing a firearm during the offense conduct; (2) using, making a credible threat to use, or directing the use of violence during the offense; (3) maintaining a premises for the purpose of manufacturing or distributing controlled substances; and (4) directing activities of at least one participant in a conspiracy involving at least five participants. Id. at ¶¶ 35–37, 39. Bradley's offense level was reduced by three levels based on his acceptance of responsibility and timely notifying the Government he intended to plead guilty. Id. at ¶¶ 43–44. Bradley had a criminal history total of 5 points based on his convictions for robbery by intimidation and because he committed the instant offense while under the sentence of a previous conviction. Id. at ¶¶ 49, 51–52. After analyzing the offense characteristics and relevant enhancements, as well as calculating Bradley's criminal history, the probation officer determined Bradley had a total offense level of 36 and a criminal history category of III. Id. at ¶ 77. Based on that information, Bradley's recommended Guidelines range was 235 to 293 months' imprisonment.[12] Id.

---

[12] The probation officer observed that the remaining counts against Bradley would be dismissed due to Bradley's plea agreement. However, the probation officer noted, if Bradley had been convicted of either of the two § 924(c) charges, he would have been subject to an additional term of imprisonment of at least five years and up to life, and if he had been convicted of both § 924(c) charges, he would have been subject to a term of at least 30 years' up to life imprisonment. Any sentence resulting from a § 924(c) conviction would have run consecutively to any other sentence. PSR, ¶ 78.

Prior to Bradley's sentencing hearing, Mr. Tate lodged objections to the PSR and filed a motion for downward variance on Bradley's behalf.  PSR Add. at 2–24; Crim. Case, Doc. 716. Through his objections, Mr. Tate stated the firearm enhancement (¶ 35) was applied through "nothing more than the impermissible theory that Defendant is a drug dealer and Defendant has a gun[;] therefore[,] Defendant must be possessing a firearm in furtherance of his illegal drug activity."  PSR Add. at 7.  Mr. Tate argued this impermissible theory was based on wire communications and texts where drug activity was not discussed, unsubstantiated statements, and another statement where a co-defendant stated she saw Bradley with a firearm one day but does not refer to drug activity (¶¶ 10, 15–19, 22, 23, 26), which Mr. Tate argued was not enough to prove Bradley's possession of a firearm or a nexus with drug trafficking.  Id. at 7–8.  Mr. Tate also objected to the two-level enhancement for use of violence (¶ 36), arguing that this enhancement was unwarranted because Bradley disputed he used, threatened to use, or directed the use of violence (¶¶ 15, 17–19, 25).[13]  Id. at 16.  Additionally, Mr. Tate objected to the enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, arguing the enhancement was not warranted because the only residence over which Bradley had any possessory interest or maintained any control was not connected to the manufacture or distribution of controlled substances.  Id. at 17–20.  Mr. Tate objected to the upward adjustment for role in the offense being applied by disputing Bradley was a manager or supervisor in the conspiracy.  Id. at 21.  Mr. Tate argued there was no evidence Bradley exerted control, influence, or decision-making authority over the individual upon whom the enhancement

---

[13]     The Government lodged an objection to the probation officer's original omission of an enhancement for use of violence, and, after considering the objection, the probation officer agreed such an enhancement was warranted.  PSR Add. at 1–2.

was based—Lovell Jones, Bradley's live-in girlfriend—as required under U.S.S.G. § 3B1.1.  Id. at 22.

At the outset of Bradley's sentencing hearing, Judge Wood adopted the factual statements in the PSR as her findings of fact and the probation officer's application of the advisory Guidelines as her legal conclusions as to those provisions to which no objections were made. Crim. Case, Doc. 768 at 4.  Mr. Tate informed Judge Wood he and Bradley wished to withdraw the objection to the two-point enhancement for the firearm possession based on their review of the PSR, the addendum, and additional discovery.  Id. at 5.  Mr. Tate confirmed he and Bradley maintained their other three objections to the PSR.

Judge Wood asked the Government to offer proof as to the other two enhancements and the upward adjustment objections Bradley still had.  The Government called Sergeant (formerly Detective) Sapp to testify.  Id.  Sergeant Sapp testified he was a part of the year-long investigation of the Bloods gang that sold drugs and used firearms and violence to protect their drugs.  Id. at 6–7.  Sergeant Sapp described some of the violent acts members of the Bloods gang participated in, such as beat ins to become a member of the gang, retaliation for drive-by shootings, and a home invasion Bradley had organized.  Id. at 7, 13–14.  Sergeant Sapp noted the beat ins occurred at the Lewises' house, there were videos of these events, and Bradley was present for some of them.  Id. at 8–9.  In addition, Sergeant Sapp described Bradley as a recruiter for the gang who held a leadership role "where he could influence and instruct others" on things to do.  Id. at 9, 10.  Sergeant Sapp also recounted a customer who was not paying Bradley for the "large amounts of crack cocaine" Bradley fronted her and explained Bradley was heard on the wiretap telling this customer he was coming to the customer's house with a firearm and that he did not care about killing somebody over his money.  Id. at 12, 17.  Sergeant Sapp also described

instances when Bradley possessed a firearm, such as when he had a firearm and narcotics inside a jacket pocket he left in another person's car and later was intercepted on a phone call telling this person he left his gun and "work" (meaning drugs) in his car. Id. at 10–11. Sergeant Sapp noted Bradley had called his stepfather to let him know he (Bradley) had just bought a .9 mm firearm for $100.00, which Bradley later said he was hiding at a house on Wolfe Street. Id. at 11. A later search of this house yielded this firearm in the exact location Bradley stated. Id. Sergeant Sapp described an incident where Bradley and another gang members made plans to rob a known drug dealer and took steps, including acquiring a firearm, to carry out the plan. Id. at 13–14. Sergeant Sapp also described audio recordings (which were played in open court) in which Bradley discussed acquiring and possessing firearms in connection with drug activity, threatened a drug buyer with violence, and threatened to kill another drug dealer. Id. at 16–20. Sergeant Sapp also described instances where Ms. Jones provided transportation for Bradley, would sometimes deliver drugs for Bradley, and once delivered a firearm for him. Id. at 21–22. Additionally, Sergeant Sapp testified that, on occasion, Bradley would not be where his customers needed him to be, and Bradley would call Ms. Jones to tell her a customer was coming to the residence they shared and directed her on the amount of drugs to give the customers. Id. at 22.

Mr. Tate cross-examined Sergeant Sapp. Id. at 23–47. During this cross-examination, Mr. Tate elicited testimony that people other than Bradley lived in or otherwise established as a residence the house on Wolfe Street, including co-defendants Freddie Holloway, Willie Middleton, and Tyrone Middleton, although Bradley may have stayed there on occasion and made numerous references to the Wolfe Street house in intercepted calls, and others sold drugs out of that residence. Id. at 35–44. In addition, Sergeant Sapp stated Bradley reportedly

operated a white house on Amherst Street as a trap house with another co-defendant, Kevin

Smith.  Id. at 45.  Further, Sergeant Sapp stated Bradley was not an active participant in the beat

ins that occurred at his mother's house, but he was present on at least a few occasions and

encouraged these beat ins.  Id. at 46–47.

Mr. Tate called Ms. Jones as a witness during the sentencing hearing.  Id. at 50.  Ms.

Jones testified Bradley did not manage or direct her actions because she accepted her

responsibility for the role she played in the conspiracy, she knew what she was doing, and she

chose to do what she did.  Id. at 52.  However, on cross-examination, the AUSA had Ms. Jones

read from her PSR, which stated she acknowledged she sold small quantities of crack cocaine at

Bradley's direction.  Id. at 54–55.  Ms. Jones testified that she reported to police a threat Bradley

had made against her because she owed him money and that she was familiar with his previous

convictions for robbery by intimidation.  Id. at 55–56.

Judge Wood heard argument from the AUSA and Mr. Tate relating to the three remaining

objections and clarified certain points with the probation officer.  Id. at 57–81.  Judge Wood

found the violence enhancement was warranted based on the preponderance of credible

evidence, citing Bradley's threats to people who owed him money and the video recorded beat

ins.  Id. at 82.  In addition, despite noting Mr. Tate had done a good job with his presentation

regarding the objection to the upward adjustment for Bradley's role, Judge Wood determined the

evidence supported the adjustment.  Id.  Judge Wood determined that Bradley did, in fact, direct

Ms. Jones' actions, as required for the enhancement, even if Ms. Jones' mind was not completely

overtaken by Bradley's will.  Id.  Judge Wood sustained Bradley's objection to the residence

enhancement because the burden had not been met as to that enhancement.  Id. at 83.  In light of

these rulings, Judge Wood determined Bradley's offense level was 34 (versus 36 in the PSR)

with a criminal history category of III, making his Guidelines range 188 to 235 months' imprisonment.  Id. at 84.

In the motion for downward variance, Mr. Tate urged the Court to downwardly depart from the advisory Guidelines because that range would result in a sentence that was too severe. Crim. Case, Doc. 716 at 1–2.  Judge Wood asked to hear from the Government and Mr. Tate relating to the motion for downward variance.  Crim. Case, Doc. 768 at 84.  The parties' arguments relied heavily on the same evidence used in support of their respective positions on the objections to the PSR.  Mr. Tate asked the Court to consider the reasonableness of the sentence and the disparity between Bradley's recommended sentence and the sentences his co-defendants received, who Mr. Tate contended were similarly situated with Bradley in terms of culpability.  Id. at 89–96.  Mr. Tate asked Judge Wood to sentence Bradley between 126 and 168 months in prison.  Id. at 95.  While Judge Wood denied the motion for downward variance, she informed Bradley and Mr. Tate she would consider Mr. Tate's arguments in fashioning a sentence under 18 U.S.C. § 3553.  Id. at 96.  The Court also heard from Bradley.  Id. at 97.

Judge Wood observed it was fortunate she was the presiding judge in this multi-defendant case and was able to focus on each person's role within the conspiracy, conduct, and history.  Id.  Judge Wood noted Bradley stood out for "the serious drug amount, his serious criminal history, the gun presence, and the very credible threats that were made, and the lack of any assistance or cooperation with law enforcement."  Id. at 98.  After consideration of what occurred at the sentencing hearing, the PSR and its addendum, the filings submitted to her, and the factors set forth in § 3553, Judge Wood found a 215-month sentence to be appropriate in light of Bradley's criminal history, the amount of drugs involved, and the actions he took during the course of the conspiracy.  Id. at 97–98.  Judge Wood noted § 3553 counsels against

unwarranted sentence disparities, but such a disparity was warranted due to Bradley's criminal history, threatening nature of his conduct, and the amount of drugs involved.  Id. at 98.

The evidence of record concerning the sentencing process clearly establishes that Mr. Tate argued on Bradley's behalf for a sentence below the advisory Guidelines range and attempted to have the Court reject or discount the enhancements the probation officer recommended and to have the Court downwardly depart from the Guidelines.  Mr. Tate was successful in having the objection to the residence enhancement sustained, resulting in a lower Guidelines range.  In addition, Bradley agreed to plead guilty to the conspiracy charge and, in return, the Government agreed to move for dismissal of the remaining counts against Bradley.  It did, and the Court dismissed these numerous other counts against Bradley, providing substantial benefit to Bradley.  Crim. Case, Doc. 734.  During the sentencing hearing, Mr. Tate argued extensively against the enhancements that were applied to Bradley and further argued the Court should downwardly depart from the Guidelines because his sentence was too severe and disproportionate to the sentences Bradley's similarly situated co-defendants received.  Bradley's claims that Mr. Tate rendered ineffective assistance related to his sentencing are without merit.

Bradley's claim that Mr. Tate was ineffective by withdrawing the objection to the firearm enhancement is without merit.  Bradley explains, and the record supports, that he agreed to the withdrawal of the objection after consulting with Mr. Tate.  Doc. 1-1 at 25; Crim. Case, Doc. 768 at 4.  There is no indication that Mr. Tate's recommendation on withdrawing that objection was deficient or that Bradley was prejudiced by withdrawal of the objection.  There was ample evidence demonstrating Bradley possessed a firearm in connection with drug trafficking, including possessing firearms in immediate proximity with narcotics Bradley intended to distribute, threatening drug customers with a firearm, and possessing a firearm in the course of

an attempted robbery of another drug dealer.  This evidence includes statements made by Bradley himself on communications obtained by wiretap.  It was imminently reasonable for Mr. Tate to recommend withdrawal of the objection to the firearms enhancement.  Bradley can demonstrate no prejudice on this point because, even if Mr. Tate had pursued the objection, the enhancement inevitably would have been imposed.

Bradley's claim that Judge Wood used his lack of cooperation with law enforcement as an improper sentencing factor and that Mr. Tate should have objected is meritless and based on a misunderstanding of what transpired at sentencing .  Doc. 1-1 at 26; Doc. 15 at 9.  Mr. Tate argued at sentencing (and Bradley continues to advance the argument) that Bradley's Guidelines range was inordinately high relative to the sentences received by co-defendants in the case.  In discussing Bradley's sentence, Judge Wood noted Bradley had not cooperated with law enforcement, while other co-defendants had, which explained the disparity in sentences.  Crim. Case, Doc. 768 at 97–98.  Judge Wood noted that "although 3553 instructs against unwarranted sentence disparities, earned ones are appropriate."  Id. at 99.  Thus, Judge Wood did not utilize Bradley's lack of cooperation as an improper sentencing factor; rather, Judge Wood acknowledged that some co-defendants received lower sentences because, in part, they had cooperated.  In doing so, Judge Wood was merely addressing the sentencing disparity argument advanced by Mr. Tate and Bradley.

Bradley's claim that Mr. Tate should have objected to the amount of drugs attributed to Bradley and impeached Bradley's mother is also unavailing.  It is clear from the record that the probation officer based the drug attribution amount on intercepted wire communications and Ms. Lewis' statements during her interview.  There is no indication, other than Bradley's conclusory argument now, that either of these sources of information was incorrect, and, thus, there is no

basis to conclude Mr. Tate was deficient in not objecting to the amount of drugs attributed to Bradley.[14]  Likewise, there is no indication that Mr. Tate was deficient in not challenging the credibility of Bradley's own mother's statements about Bradley's role in the conspiracy.  Even if Mr. Tate had successfully done so, it would have left only the intercepted wire communications regarding drug attribution, which would have resulted in a substantially larger amount of drugs being attributed to Bradley.

Finally, Bradley's generalized claims about Mr. Tate's unpreparedness at the sentencing hearing lack merit.  Mr. Tate's statement that he was "hamstrung" as to some arguments was an acknowledgement that, despite his efforts, he was not privy to certain details of the plea agreements other co-defendants and the Government reached and the PSRs for those other co-defendants which made his arguments a little more difficult—though not impossible—to make. Id. at 92–93.  This statement does not show Mr. Tate was deficient in his performance.  Rather, Mr. Tate was highlighting for the Court the general and ordinary limitations on access to information about co-defendants in a multi-defendant case.

Bradley's contention that Mr. Tate called Sergeant Sapp by a wrong name at the sentencing hearing is similarly meritless.  All indications in the record that Mr. Tate mistakenly called Sergeant Sapp "Officer Wood" as an inadvertent oversight.  There is no indication the oversight was related to a deficiency in Mr. Tate's performance or that Bradley was prejudiced in any way.  Indeed, the record in this case demonstrates Mr. Tate was well-prepared at the sentencing hearing, argued forcefully and knowledgeably on Bradley's behalf, and, in fact, was successful on one of his objections to the PSR.

---

[14]     To be clear, Bradley concedes he was member of the Bloods gang and an active participant in a conspiracy to distribute crack cocaine.  Doc. 1-1 at 27.  He only now contends he did not distribute as much crack cocaine as the probation officer attributed to him.

For all these reasons, Bradley is not entitled to relief on his claims that his appointed counsel rendered ineffective assistance at any point during the representation, and the Court should **DENY** these portion of Bradley's Motion.

## VI.    Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Bradley leave to appeal *in forma pauperis*. Though Bradley has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue

only if the applicant makes a substantial showing of a denial of a constitutional right.  The

decision to issue a certificate of appealability requires "an overview of the claims in the habeas

petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336

(2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of

reason could disagree with the district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it

to dispose of the case, a reasonable jurist could not conclude either that the district court erred in

dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v.

McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th

Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal

bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of Bradley's Motion and filings and the Government's

Responses and applying the Certificate of Appealability standards set forth above, there are no

discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the

issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies

Bradley a Certificate of Appealability, Bradley is advised that he "may not appeal the denial but

may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."

Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts.

Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be

taken in good faith.  Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Bradley's § 2255 Motion, as amended and supplemented, **DENY** Bradley's Motion to Dismiss, doc. 38, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Bradley *in forma pauperis* status on appeal and a Certificate of Appealability.  I **GRANT** Bradley's construed Motions to Amend and his Motion for Leave to Supplement.  Docs. 21, 25, 33.  I **DENY** Bradley's Motion to Change Venue, doc. 26.

The Court instructs any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

      **SO ORDERED** and **REPORTED and RECOMMENDED**, this 17th day of July, 2020.

 

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA